(No. 5080- ▮▮▮▮▮▮▮)

Lincoln Chapter, Logan County Federation of Sportsmen's Clubs, An Illinois Not-For-Profit Corporation, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed December 10, 1964.*

Robert J. Woods and Roger W. Thompson, Attorneys for Claimant.

William G. Clark, Attorney General; C. Arthur Nebel, Assistant Attorney General, for Respondent.

Perlin, C. J.

Claimant, Lincoln Chapter, Logan County Federation

of Sportsmen's Clubs, an Illinois Not-For-Profit Corporation, seeks recovery of $970.18 for damages caused to personal and real property, owned by claimant, on June 12, 1962 by Robert Bluemel, an inmate of the Lincoln State School, Lincoln, Logan County, Illinois.

The complaint alleges that the State of Illinois, by and through its agents and servants, failed to exercise reasonable care in preventing the escape of the inmate, Robert Bluemel, and that, as a proximate result of this negligence, he escaped and caused damage to claimant's property.

The evidence shows that, on June 12, 1962, Robert Bluemel, aged 41, was a patient of the Lincoln State School, which was operated by the State of Illinois as an institution for mentally retarded persons. He had been a patient there since his admission in 1953. At about 3:00 P.M. on June 12, 1962, Bluemel, who was quartered in the town portion of the Lincoln State School, escaped from the institution, and, while absent, caused damage to the property, owned by claimant, by setting fire to its clubhouse, and smashing various items of personal property within the building. The patient was apprehended about 6:30 P.M. the same day by security officers from the Lincoln State School, and was returned to the institution.

Mr. Robert Endres, Chief of the Safety Protection Service at the Lincoln State School, testified that there were about 3,000 to 3,200 patients at the town unit of the school. Another unit of the school is located at a farm, approximately three miles north of the town unit. He stated that there were normally about two men from his department stationed at the town unit. The men in his department are charged with the safety and protection of the patients and property, and the public in general, and attempt to see that the patients are kept within their various units.

According to Endres, Lincoln State School is not a

penal institution, and, although there is a fence around it, at least two of the four gates are open at all times. There were no guards or attendants at the gates or approaches.

Endres testified that, since Robert Bluemel was admitted to the institution, he had five previous unexcused absences or escapes, the last one occurring on June 4, 1962, when he escaped, and was returned on the same day. The other escapes occurred in 1953, 1955 and 1960.

In the town unit there is one maximum security building, called Smith Cottage, and a second designated as North Wing. The third floor of North Wing is a locked ward, and the remaining two floors are open. Bluemel escaped from the second floor of North Wing. On the second floor of North Wing there was at the time of the incident usually one attendant to supervise 70 or 80 patients. In the opinion of the witness, additional men or means were needed to prevent patients from wandering off the grounds, and doing damage to persons or property.

According to the report received by Endres, Robert Bluemel was working in the storeroom of the second floor of North Wing, and received permission from an employee to go to his quarters on the third floor of North Wing, but he proceeded, instead, to go out of the building and through the open gate. Had he been in his quarters on the third floor, he would have been locked in. Since Lincoln State School is an open institution, patients are permitted on the grounds, but not off the grounds without special permission, and then only when accompanied by an employee. The decision as to whether or not a patient be kept in a locked ward is made by the Superintendent, who is a medical doctor.

William Chambers, Chief Psychologist at the Lincoln State School, testified that to his knowledge a psychiatrist had not been employed at the Lincoln State School for two

or three years preceding June 12, 1962, although possibly one might have come in on consultation. While Robert Bluemel was at the Lincoln State School, he was tested one time in June, 1953. Mr. Chambers saw Bluemel on May 14, 1958 to evaluate his mental condition, and concluded he was diagnostically inadequate, with paranoid symptoms, and was developing a psychosis.

Mr. Chambers summarized Bluemel's history as follows: Robert Bluemel came to Lincoln State School from the Illinois Security Hospital on a transfer on June 1, 1953. He was a cooperative individual at the Security Hospital. He had originally been committed to the Dixon State School on March 25, 1930 by the Circuit Court of Cook County. His commitment was occasioned by frequent truancy from home, and failure to adjust in several foster home placements. At Dixon his over-all adjustment was very poor during his entire stay. He fought other patients, escaped frequently, repeatedly destroyed property, constantly engaged in malicious mischief, without known provocation, and was a chronic aggressive homosexual. He suffered gonorrhea in 1935, which developed into meningitis. He suffered gonorrhea again in 1938 and 1941 and infected many other patients. He also contracted syphilis about that time. Because of this behavior, he was transferred to the Illinois Security Hospital on January 1, 1950. The specific incident, which caused this transfer, was that he escaped from Dixon to Wisconsin, and, while on escape, burglarized a filling station, stole a car, and accosted a young girl in a restaurant. He also admitted that he had burglarized a fishing cabin, and had stolen articles of clothing, a gun, and a butcher knife. In June, 1955, he was given a trial on wage placement in a nursing home, and was returned in August of that year, because of an unauthorized absence from his job.

On June 4, 1962, he escaped, and was apprehended, and punished in Smith Cottage. On his release, he was angry, because he was to be placed on a locked floor of North Wing, instead of being returned to the second floor, and to his job in the storeroom. He escaped again on June 12, 1962, and entered the Sportsmen's Club near the institution. There he destroyed articles of furniture, tore an American flag, and set it afire. He stole food and a large hunting knife, and threatened a woman and her daughter with this knife in an attempt to get them to drive him to Springfield. He bragged about his attempt to assault the security guards, who came to apprehend him, and admitted that he threatened them with the knife, which he stole from the premises. He made repeated homicidal threats against "American Schwein", spoken in pseudo-German, and hinted about his private communications with Nazi leaders.

After the escape in question, Chambers conducted a full interview with Bluemel, and suggested that he be transferred to the Illinois Security Hospital for his protection and the protection of others.

In Chambers' opinion, Lincoln State School lacks sufficient staff in several areas of functioning. He stated: "It turned out that Robert needed much more supervision than we gave him. Robert was in Smith Cottage, and participated in our rehabilitation, and he was released to work in connection with rehabilitation proceedings there. This meant that he was allowed to return to the second floor of North Wing and to his job, where he had undue freedom, and then he was, for one month, in solitary confinement in the night time. Then the decision was made to have him leave Smith Cottage, and be on the locked floor, which, on the face of it, I didn't think he was capable to adjust to this freedom in the daytime, and then being locked up in the evening. What had happened was the decision of how

Robert was to be handled was made at different places and according to different programs, and it is not like we would like it to be—in other words, the consistency of it."

Chambers further testified that five psychologists are employed at Lincoln State School for 5,200 to 5,500 patients. When Chambers interviewed Bluemel in 1958, he did record a finding, which would indicate a disturbed personality, which might be damaging to people and property. In his opinion there was not sufficient personnel at the Lincoln State School, either before or during June, 1962, to study and evaluate the mental conditions of the patients at the institution.

Before recovery may be granted, claimant must prove by a preponderance of the evidence that the State, by and through its servants, was negligent in failing to exercise reasonable care to prevent the escape of the patient, and that the negligence of the State was the proximate cause of the damage inflicted upon claimant's property.

Respondent presented no testimony in the proceedings, but joined in the offer of an exhibit.

In *Redebaugh* vs. *State of Illinois*, 22 C.C.R. 306, this Court said: "The Department of Public Welfare owes a duty to the public to see that inmates of a State School do not escape, and cause injury to others." The Court further stated at page 308: "Since respondent did not offer any evidence in rebuttal that would show that reasonable efforts were made to prevent the escape of the inmates, or any other facts or circumstances surrounding their escape, the Court must conclude that there were no facts and circumstances."

The Court has also held in similar factual situations that, if claimant makes a prima facie case, and respondent offers no evidence as to the circumstances surrounding the

40

escape, it will conclude that claimant has sustained the burden of proof. *Carl Paulus* vs. *State of Illinois,* No. 4945; *U.S.F. & G.* vs. *State of Illinois,* 23 C.C.R. 188.

Both the official in charge of security at the Lincoln State School and the Chief Psychologist testified that the patients were not adequately supervised, and the psychologist stated that there was not sufficient personnel to evaluate the mental conditions of the approximately 5,000 patients in residence at the institution.

In view of the patient's history: five escapes, one just eight days prior to the incident in question, his homosexual activities, his paranoid symptoms, and the findings of a disturbed personality, which might be damaging to people and property, it was reasonable to anticipate that allowing him freedom of the Lincoln State School, which is an open institution, might or could result in damage to persons or property.

It is the opinion of the Court that respondent was negligent in failing to exercise reasonable care to prevent the escape of Robert Bluemel, and that this negligence was the proximate cause of the damages inflicted upon the property of claimant by the inmate, Robert Bluemel.

The Departmental Report, submitted by Dr. Joseph Albaum, Superintendent of Lincoln State School, states that the estimate of damages caused by Robert Bluemel to claimant's property is approximately $1,000.00, and that the figure of $970.18, listed by the bill of particulars, is correct. The Report states: "The claimant is justly entitled to the amount therein."

The claimant, Lincoln Chapter, Logan County Federation of Sportsmen's Clubs, an Illinois Not-For-Profit Corporation, is, therefore, awarded the sum of $970.18.